1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SCOUT.COM, LLC and SCOUT
PUBLISHING, LLC,

Petitioners,

v.

BUCKNUTS, LLC, *et al.*,

Respondents.

CASE NO. C07-1444 RSM

ORDER GRANTING
RESPONDENTS' MOTION TO
DISMISS

## I.  INTRODUCTION

This matter comes before the Court on petitioners' Motion to Compel Individual Arbitrations and Stay AAA "Class" Proceedings and respondents' Motion to Dismiss.  (Dkt. #10 and #15).  Petitioners argue that this Court has the authority to make a class arbitration determination based on agreements entered into between the respective parties.  Petitioners further argue that the agreements do not permit class arbitration and therefore request that the Court compel respondents to proceed with their arbitration claims individually.  Respondents argue that only the arbitrator has the authority to determine whether the arbitration provisions of the agreements permit class arbitration.  Thus, respondents argue that this petition should be dismissed.

For the reasons set forth below, the Court shall GRANT respondents' Motion to Dismiss and STRIKE AS MOOT petitioners' Motion to Compel Individual Arbitrations and

MEMORANDUM ORDER
PAGE - 1

1    Stay AAA "Class" Proceedings.[1]

2    **II.  DISCUSSION**

3    **A.  Background Facts and Procedural History**

4    On May 11, 2007, respondents Bucknuts, LLC ("Bucknuts"), InsideTx, Inc.

5    ("InsideTx"), and Major Upset Productions, Inc. dba The Bootleg ("The Bootleg"), filed a

6    Consolidated Class Action Complaint with the American Arbitration Association ("AAA")

7    against petitioners Scout.Com, LLC and Scout Publishing, LLC (collectively "Scout").  (Dkt.

8    #11, Buckley Decl., Exh. A).  Respondents are self-described operators of independent

9    websites and publish independent magazines dedicated to high school, college and

10   professional athletics in various parts of the country.  *Id.* at ¶¶ 1, 3-5.  Bucknuts owns and

11   operates a website providing information about The Ohio State University's athletic teams.

12   *Id.* at ¶ 3.  InsideTx owns and operates a website providing information about the University

13   of Texas' athletic teams.  *Id.* at ¶ 4.  The Bootleg owns and operates a website providing

14   information about Stanford University's athletic teams.  *Id.* at ¶ 5.  Scout is a Washington

15   limited liability corporation that operates the Scout Internet Network and the Scout Magazine

16   Network.  *Id.* at ¶¶ 7 and 8.  The networks collectively provide information about high school,

17   college, and professional sports teams.  *Id.*

18   The gravamen of respondents' AAA complaint is that Scout has failed to properly

19   compensate respondents pursuant to agreements signed between the parties, and has deceived

20   respondents by engaging in unlawful business practices.  *Id.* at ¶ 2.  Respondents bring their

21   AAA complaint on "behalf of themselves and on behalf of (a) a class of approximately 300

22   persons, companies, or other entities that owned or provided content for a website [owned by

23   Scout] . . . ; and (b) a class of approximately 45 persons, companies, or other entities that

24   owned or provided content for a magazine [owned by Scout].  *Id.* at ¶ 14.  On August 17,

25   

26   [1] Although this Court rules only on respondents' Motion to Dismiss, the Court agrees with
     petitioner that petitioners' Motion to Compel presents similar legal issues and analyses.  As a result, the
27   Court considered the arguments made by both parties with respect to petitioners' motion, and incorporates
     those arguments into this Order.
28   

MEMORANDUM ORDER
PAGE - 2

2007, respondents filed a "clause construction" motion with the AAA arbitrator, seeking a ruling that class arbitration is authorized. (Dkt. #11, Buckley Decl. ¶ 11). Scout requested the Arbitrator stay his decision and brought a petition in this Court on September 17, 2007. (Dkt. #1). In its petition, Scout seeks an Order from this Court to stay the AAA "class" proceeding and compel respondents to pursue their arbitration claims individually. *Id.*[2] Scout subsequently sought to enforce its petition by filing a motion to compel on September 27, 2007. (Dkt. #10). Scout argues in their moving papers that pursuant to agreements signed between the parties, respondents are not permitted to pursue class arbitration. Specifically, Scout indicates that it entered into Network Affiliate Agreements and Magazine Content, License, Publishing and Marketing Agreements (collectively "Agreements") with respondents that contained specific carve-outs to arbitration. The arbitration provision, which is contained in each of the agreements between the parties, provides:

> Any dispute or claim arising out of or in connection with this Agreement, *except for the provisions of Section 8 or Section 13*, will be finally settled by binding arbitration in Seattle, Washington [or Birmingham, Alabama] in accordance with the then-current Commercial Arbitration Rules of the American Arbitration Association by one arbitrator appointed in accordance with said rules.

(Dkt. #11, Buckley Decl., Ex. B ¶ 13.10; Ex. C ¶ 13.9; Ex. D ¶ 14.9; Ex. E ¶ 13.9; Ex. F ¶ 14.9; Ex. G ¶ 13.9; Dkt. #14 at 5) (emphasis added).

In some of the Agreements, Section 8 is titled "Representations and Warranties," while in others, Section 8 is titled "Confidentiality." (Dkt. #11, Buckley Decl., Ex. B ¶ 8; Ex. C; ¶ 8; Ex. D ¶ 8; Ex. E ¶ 8; Ex. F ¶ 8; Ex. G ¶ 8). In addition, Section 13 in some of the Agreements is titled "Miscellaneous," while in others, Section 13 is titled "Ownership." *Id.* at Ex. B ¶ 13; Ex. C; ¶ 13; Ex. D ¶ 13; Ex. E ¶ 13; Ex. F ¶ 13; Ex. G ¶ 13.[3] Based on these

---

[2] Scout amended its original petition on October 12, 2007, by adding an additional respondent, Trojan Sports Publishing, LLC ("Trojan Sports"). (Dkt. #14 at 2).

[3] It is noteworthy that neither party produced an agreement between Scout and newly added respondent, Trojan Sports. The only reference made to this agreement is contained in petitioner's amended motion to compel. (Dkt. #14 at 5). This Court is unable to determine what is contained in Section 8 or Section 13 of that particular agreement.

MEMORANDUM ORDER
PAGE - 3

1   provisions, Scout argues that the parties have expressly carved out from the scope of any

2   arbitration proceeding all disputes concerning the arbitration clauses themselves.  Scout

3   further argues that it is undisputable that none of the arbitration clauses in the Agreements

4   provide for class arbitration.  Thus, Scout argues that class arbitration is impermissible as a

5   matter of law.

6          After petitioners filed their motion, respondents filed their response and concurrently

7   filed a motion to dismiss.  (Dkt. #15).  In their motion, respondents argue that Scout's petition

8   should be dismissed as a matter of law pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ.

9   P. 12(b)(6) because: (1) Scout has waived its opportunity to challenge the jurisdiction of the

10  arbitrator; (2) the parties have incorporated the Commercial Arbitration Rules of the AAA by

11  reference, vesting the decision to decide arbitrability with an Arbitrator rather than this Court;

12  and (3) the requirements of § 4 of the Federal Arbitration Act have not been met as Publishers

13  neither refused arbitration nor "aggrieved" Scout in any way.  (Dkt. #15 at 2).    **B.**

14  **Standard of Review**

15         A motion to dismiss under Fed. R. Civ. P. 12(b)(1) addresses the court's subject

16  matter jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)

17  (finding that federal courts are courts of limited jurisdiction).  They possess only that power

18  authorized by United States Constitution and statute, which is not to be expanded by judicial

19  decree.  *Id.*  The burden of establishing the subject matter jurisdiction rests upon the party

20  asserting jurisdiction.  *Id.*  When considering a motion to dismiss pursuant to Fed. R. Civ. P.

21  12(b)(1), the Court is not restricted to the face of the pleadings, but may review any evidence,

22  such as affidavits and testimony, to resolve factual disputes concerning the existence of

23  jurisdiction.  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

24         Under Fed. R. Civ. P. 12(b)(6), the Court must dismiss a complaint if a plaintiff can

25  prove no set of facts in support of her claim which would entitle her to relief.  *Van Buskirk v.*

26  *Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Sprewell v. Golden State*

27  *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Love v. United States*, 915 F.2d 1242,1245 (9th

28  Cir. 1989).  In deciding a motion to dismiss, courts accept as true all material allegations in

MEMORANDUM ORDER
PAGE - 4

1    the complaint and construes them in the light most favorable to the plaintiff. *See Newman v.*

2    *Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002); *Associated Gen. Contractors v. Metro.*

3    *Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998). However, conclusory allegations of law

4    and unwarranted inferences are insufficient to defeat a motion to dismiss. *Associated Gen.*

5    *Contractors*, 159 F.3d at 1181. A court is restricted to consider only the facts alleged in the

6    complaint when reviewing a 12(b)(6) motion to dismiss, but a court may consider extrinsic

7    evidence by turning such motion into a summary judgment motion pursuant to Fed. R. Civ. P.

8    56. *See* Fed. R. Civ. P. 12(b).

9        As applied to arbitration, federal district courts are permitted to dismiss claims that are

10    subject to arbitration pursuant to either Fed. R. Civ. P. 12(b)(1) or Fed. R. Civ. P. 12(b)(6).

11    *See, e.g., Inlandboatmens Union of Pacific v. Dutra Group*, 279 F.3d 1075, 1078-84 (9th

12    Cir. 2002) (affirming district court's decision to dismiss pursuant to Fed. R. Civ. P. 12(b)(1)

13    where the parties entered into an agreement that subjected their dispute to arbitration); *see*

14    *also Thinket Ink Info. Res., Inc., v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir.

15    2004) (holding that the district court did not err in dismissing plaintiffs' claims that were

16    subject to arbitration pursuant to Fed. R. Civ. P. 12(b)(6)).

17        **B. Federal Law Governing Arbitrability**

18        The Federal Arbitration Act ("FAA") governs any written provision in a "contract

19    evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

20    arising out of such contract." 9 U.S.C. § 2. The FAA applies to all contracts that involve

21    interstate commerce. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281,

22    115 S.Ct. 834 (1995). In this case, it is undisputed that the parties are from different states

23    and entered into Agreements that were executed and perform across state lines. Therefore the

24    FAA and its corresponding case law applies.

25        Furthermore, "[t]he FAA provides for stays of proceedings in federal district courts

26    when an issue in the proceeding is referrable to arbitration, and for orders compelling

27    arbitration when one party has failed or refused to comply with an arbitration agreement."

28    *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S.Ct. 754 (2002) (*citing* 9 U.S.C. §§

MEMORANDUM ORDER
PAGE - 5

3 and 4). The Supreme Court has read these provisions to "manifest a 'liberal federal policy favoring arbitration agreements.'" *Id*. (citations omitted). If there exists a doubt about whether an issue or dispute is arbitrable, the doubt should be resolved in favor of arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346 (1985). In addition, where courts are faced with multiple ambiguous provisions, courts "should not, on the basis of 'mere speculation' that an arbitrator might interpret [the] ambiguous agreements in a manner that casts enforceability in doubt, take upon [themselves] the authority to decide the antecedent question of how the ambiguity is to be resolved." *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401, 406-07, 123 S.Ct 1531 (2003) (*citing Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 541, 115 S.Ct. 2322 (1995)). The existence of multiple agreements between parties may lead to ambiguity and courts are required to resolve such ambiguities in favor of arbitration. *See, e.g., Hartford Acc. and Indem. Co. v. Swiss Reinsurance America Corp.*, 246 F.3d 219, 227 (2d Cir. 2001) (finding ambiguity in multiple contracts between the same parties).

However, if the parties have clearly indicated that the dispute is outside the scope of arbitrability, a court is equally compelled to enforce such intent. The "preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered . . . [and to] rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238 (1985); *see also Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248 (1989) (finding that the primary purpose of the FAA is to ensure that "private agreements to arbitrate are enforced according to their terms"). Arbitration is a "matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steel Workers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347 (1960); *see also Teamsters Local 315 v. Union Oil Co. of California*, 856 F.2d 1307, 1314 (9th Cir. 1988) (finding that evidence of a purpose to exclude a claim from arbitration rebuts the presumption of arbitrability); *see also Building Materials and Constrs. Teamsters Local No. 216 v. Granite Rock Co.*, 851 F.2d 1190, 1195 (9th Cir. 1988) (holding that "[t]he parties . . .

MEMORANDUM ORDER
PAGE - 6

1   decide whether and to what extent their disputes will be subject to binding arbitration").

2   Therefore "any power that the arbitrator has to resolve the dispute must find its source in a

3   real agreement between the parties.  [The arbitrator] has no independent source of jurisdiction

4   apart from the consent of the parties." *I.S. Joseph Co., Inc. v. Michigan Sugar Co.*, 803 F.2d

5   396, 399 (8th Cir. 1986).

6          In the instant case, Scout argues that the parties have expressly carved out from the

7   scope of any arbitration proceeding all disputes concerning the arbitration clauses themselves.

8   Scout points to the language of the arbitration provisions at-issue which, as mentioned above,

9   indicates that "[a]ny dispute or claim arising out of or in connection with this Agreement,

10  *except for the provisions of Section 8 or Section 13*, will be finally settled by binding

11  arbitration."  (Dkt. #11, Buckley Decl., Ex. B ¶ 13.10; Ex. C ¶ 13.9; Ex. D ¶ 14.9; Ex. E ¶

12  13.9; Ex. F ¶ 14.9; Ex. G ¶ 13.9; Dkt. #14 at 5) (emphasis added).[4]  For four of the six

13  arbitration provisions at-issue, Section 8 is titled "Representations and Warranties" and

14  Section 13 is titled "Miscellaneous."  The "Miscellaneous" provisions include: Public

15  Announcements; Assignment; Controlling Law; Notice; Binding Effect [and] Authority; Entire

16  Agreement; Severability [and] Waiver; Relationship of Parties; Arbitration; Attorney's Fees;

17  Counterparts; Advice of Legal Counsel; Defined Terms; and Non-disparagement and

18  Confidentiality.  In the remaining two arbitration provisions at-issue, Section 8 is titled

19  "Confidentiality" and Section 13 is titled "Ownership."  Furthermore, in each of the afore-

20  mentioned Sections, the Agreements are silent on the issue of whether class arbitration is

21  permitted.  In fact, both parties acknowledge that the Agreements do not address the issue of

22  class-arbitartion.[5]

23  _____

24       [4] Notably, this Court finds no merit in respondents' position that the AAA rules trump the
    language of the at-issue arbitration provisions.  The clause "except for the provisions of Section 8 or
25  Section 13" clearly modifies the language of the at-issue provision that provides that all disputes are to be
    settled in accordance with the AAA rules.
26

27       [5] Scout states "[t]here is no dispute that the arbitration clauses in the Agreements here are silent on
    the topic of class arbitration[.]" (Dkt. #10 at 9).  Respondents do not challenge this assertion in any of their
28  pleadings.

MEMORANDUM ORDER
PAGE - 7

1    As a result, Scout argues that if an arbitration provision is silent on the issue of class

2    arbitration, faithful adherence to the parties' agreement requires that class arbitration be

3    denied.  On the other hand, respondents assert that this matter has been settled by the

4    Supreme Court in *Green Tree Fin. Group v. Bazzle*, 539 U.S. 444, 123 S.Ct. 2402 (2003).

5    Respondents characterize *Green Tree* as standing for the proposition that whether a silent

6    arbitration agreement permits class arbitration is a matter for the arbitrator to decide.

7    Therefore the dispositive issue before this Court is whether *Green Tree* applies to the facts of

8    this case.

9       **C.  *Green Tree* and its Progeny**

10    In *Green Tree*, the Supreme Court was faced with an arbitration provision that was

11    silent on the issue of whether class arbitration was permitted.  The contract which the parties

12    entered into provided:

13        ARBITRATION - All disputes, claims, or controversies arising from or relating to this
          contract or the relationships which result from this contract . . . *shall be resolved by*
14        *binding arbitration by one arbitrator selected by us with consent of you.*

15    *Green Tree*, 539 U.S. at 448 (emphasis in original).

16    Based on these terms, the Court found that "the dispute about what the arbitration

17    contract in each case means (*i.e.*, whether it forbids the use of class arbitration procedures) is

18    a dispute 'relating to this contract' and the resulting 'relationships.'" *Id.* at 451.  The Court

19    determined that the relevant question was "what *kind of arbitration proceeding* the parties

20    agreed to," *id.* at 452 (emphasis in original), and held that "the parties seemed to have agreed

21    that an arbitrator . . . would answer the relevant question." *Id.* at 451-52.  In its analysis, the

22    Court also reasoned that this question was outside the scope of "gateway matters, such as

23    whether the parties have a valid arbitration agreement at all or whether a concededly binding

24    arbitration clause applies to a certain type of controversy," that parties generally expect a

25    court to decide. *Id.* at 452 (*citing Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83,

26    123 S.Ct. 588 (2002)).  The Court concluded that "[g]iven these considerations, along with

27    the arbitration contracts' sweeping language concerning the scope of the questions committed

28    to arbitration, this matter of contract interpretation should be for the arbitrator, not the courts,

MEMORANDUM ORDER
PAGE - 8

1   to decide." *Id.* at 453.

2          Post-*Green Tree*, at least two Ninth Circuit cases have implicitly recognized that if an

3   arbitration agreement is silent on the issue of class arbitration, then the issue should be settled

4   by an arbitrator. *See, e.g., Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976,

5   992 (9th Cir. 2007) (recognizing that *Green Tree* "concluded that an arbitrator . . . should

6   have determined whether an arbitration agreement that was silent on the issue of class

7   arbitration did in fact authorize class proceedings"); *see also Sanford v. Memberworks, Inc.*,

8   483 F.3d 956, 964 (9th Cir. 2007) (recognizing that *Green Tree* "held that whether a contract

9   permits class arbitration is an issue for the arbitrator to decide"). Additionally, other federal

10   courts have consistently followed *Green Tree's* mandate. *See Johnson v. Long John Silver's*

11   *Rests., Inc.*, 320 F. Supp. 2d 656, 668 (M.D. Tenn. 2004) (finding that *Green Tree*

12   "specifically states that the arbitrator, not the court, should determine whether class arbitration

13   is permitted by an ambiguous contract"); *In re Universal Serv. Fund Tel. Billing Practices*

14   *Litigation*, 300 F. Supp. 2d 1107, 1126-27 (D.Kan. 2003) (holding that the contract at-issue

15   "does not by its terms ban class-wide arbitration. Rather, it is silent on this issue. Under

16   theses circumstances, the availability of class-wide arbitration is an issue that must be decided

17   by an arbitrator in the first instance."); *Blimpie Int'l Inc. v. Blimpie of the Keys*, 371 F. Supp.

18   2d 469, 474 (S.D.N.Y. 2005) ("[W]hether a particular procedural device is permissible in the

19   absence of any language in the agreement is a question of 'contract interpretation and

20   arbitration procedures,' which 'arbitrators are well situated to answer'") (citation omitted).

21          The Court finds that a case out of the Fifth Circuit is significantly relevant here. In

22   *Pedcor Mgmt. Co. Welfare Benefit Plan v. Nations Pers. of Texas, Inc.*, the court explained

23   that *Green Tree* "made the initial determination that the language of the arbitration agreement

24   *did not clearly forbid* class arbitration." 343 F.3d 355, 359 (5th Cir. 2003) (emphasis in

25   original). Therefore the court held that *Green Tree* was sufficiently analogous to its case

26   because "*Green Tree* applies, at a minimum, to arbitration agreements under the FAA, and

27   because the arbitration provision in this case also incorporates the FAA, the Court's holding is

28   applicable here." *Id.* at 361.

MEMORANDUM ORDER
PAGE - 9

1    In the instant case, Scout attempts to distinguish *Green Tree* by arguing that there are

2    carve-outs in its Agreements with respondents.  Scout reasons that *Green Tree* applies only to

3    broad sweeping arbitration provisions that do not contain exceptions.  However, the Court

4    finds the Agreements in this case are sufficiently analogous to fit within the holding of *Green*

5    *Tree* for three reasons.

6    First, the Agreements at-issue do not expressly forbid class arbitration proceedings.

7    The Supreme Court in *Green Tree* made a determination that the language of the arbitration

8    agreement did not clearly forbid class arbitration in reaching its conclusion that the issue was

9    left for the arbitrator.  Likewise, in the instant case, both parties and this Court agree that the

10   Agreements are silent on the issue of class arbitration.  The arbitration provisions found in

11   Sections 13.9, 13.10 and 14.9 in the various Agreements between Scout and respondents do

12   not address class arbitration.  In addition, the referenced carve-outs found within these

13   provisions also do not address class arbitration.  Therefore this silence cuts in favor of the

14   applicability of *Green Tree* to this case.

15   Second, *Green Tree* applies to agreements that are governed by the FAA, and the

16   Agreements at-issue are governed by the FAA.  As Scout correctly points out, the FAA and

17   its rules govern this dispute.  *Green Tree* was intended to apply to arbitration provisions that

18   were also governed by the FAA.  Thus, this fact also cuts in favor of the applicability of *Green*

19   *Tree.*

20   Lastly, and most compelling to this Court, the Agreements are sufficiently ambiguous

21   to justify dismissal of this action.  Although Scout asserts that the Agreements expressly carve

22   out from the scope of any arbitration proceeding all disputes concerning the arbitration clauses

23   themselves, the Court cannot conclude with certainty that this is the case.  As mentioned

24   above, for four of the six agreements, what is carved-out from arbitration are disputes around

25   "Representations and Warranties" and "Miscellaneous" provisions in Section 13.  For the

26   remaining two agreements, disputes around "Confidentiality" and "Ownership" are excluded

27   from arbitration.  Nowhere in any of these provisions that have been carved out is there any

28   clear mention or mandate that suggests disputes concerning the arbitration clauses themselves

MEMORANDUM ORDER
PAGE - 10

1  - such as whether respondents are permitted to proceed as a class or not in arbitration - should

2  be excluded from consideration by the arbitrator.

3        Additionally, the presence of such multiple *inconsistent* arbitration provisions creates

4  an ambiguity as well.  Had Scout clearly intended to exclude from arbitration all disputes

5  concerning the arbitration provisions themselves, it would not have placed such prominent

6  language in significantly different places within its Agreements with respondents.  The

7  existence of the carve-out provision in Section 14, rather than Section 13, of the Network

8  Affiliate Agreements with InsideTx and The Bootleg presents conflicting intentions, thereby

9  rendering the Agreements ambiguous.  Also, no agreement between Scout and newly added

10 respondent Trojan Sports has been produced, and therefore the Court is unable to determine

11 the scope of the arbitration carve-out in that Agreement.  This Court therefore will follow the

12 well-established mandate of the Supreme Court that courts should not "take upon

13 [themselves] the authority to decide the antecedent question of how the ambiguity is to be

14 resolved."  *PacifiCare*, 538 U.S. at 406-07 (*citing Vimar*, 515 U.S. at 541).

15       Given the applicability of *Green Tree* to the instant case, coupled with the ambiguity

16 inherent in the Agreements between the parties, this Court concludes that it cannot compel

17 respondents to proceed with their arbitration claims individually.  The Court further finds it

18 unnecessary to address the remaining arguments presented by the parties in their respective

19 motions.  Accordingly, Scout's petition is dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

20 ### III.  CONCLUSION

21       Having reviewed, and the remainder of the record, the Court hereby finds and

22 ORDERS:

23       (1)  Respondents' Motion to Dismiss (Dkt. #15) is GRANTED.  The Court finds that

24 whether respondents are permitted to proceed as a class in the underlying arbitration

25 proceeding is a matter to be resolved by the arbitrator.

26       (2)  Petitioners' Motion to Compel Individual Arbitrations and Stay AAA "Class"

27 Proceedings (Dkt. #10) is STRICKEN AS MOOT.

28

MEMORANDUM ORDER
PAGE - 11

1        (3) Respondents' Motion For Leave To File Excess Pages (Dkt. #35) is STRICKEN

2 AS MOOT.

3        (4)  The case is now CLOSED.

4        (5)  The Clerk is directed to forward a copy of this Order to all counsel of record.

5

6        DATED this 16th day of November, 2007.

7

8                              RICARDO S. MARTINEZ

                              UNITED STATES DISTRICT JUDGE

MEMORANDUM ORDER
PAGE - 12